Albert KUTNER, Eleanor V. Kutner, Reuben Kutner and Eleanor Kutner, Plaintiffs,

v.

DELAWARE TOOL STEEL CORPORA-TION, a Delaware Corporation, Defendant.

Civ. A. No. 2325.

United States District Court
D. Delaware.

Oct. 9, 1962.

David Snellenburg, II, of Killoran & Van Brunt, Wilmington, Del., for plaintiffs.

Frank J. Miller, of Walker, Miller & Wakefield, Wilmington, Del., for defendant.

LAYTON, District Judge.

Albert and Reuben Kutner with their wives, the plaintiffs, jointly own 3301 Market Street, an unimproved lot in the City of Wilmington, Delaware. Market Street is a busy, noisy thoroughfare travelled by busses, trucks and other vehicular traffic.

The defendant owns and operates a tool manufacturing plant directly across the street from the Kutner lot at 3306 Market Street. It makes tools for shock and impact applications, such as chisels, paving breaker tools and tools used in air or electric hammers. One of the operations in the manufacturing process is the forging of metal by drop hammers. Defendant purchased 3306 Market Street in 1918. Since that time it has, among other uses, been continuously used as a forge shop. Defendant employs about 65 people of which 15 are office employes.

Plaintiff, Albert Kutner, first leased 3301 Market Street in 1946, and since that date has continuously operated the site as a used-car sales lot. In 1953, plaintiffs purchased the lot. Kutner uses a trailer as a sales office.

The neighborhood is zoned C–2. The defendant's use of its land constitutes a valid non-conforming use in a secondary business district. A plot of the immediate location, entitled Exhibit 2, is reproduced and annexed to this opinion.[1]

1. The Court has arbitrarily added a position (6) to Ex. 2.

JOB NO. 150625                    BOLT BERANEK & NEWMAN INC

EX. 2

JOB NO. 150625                    BOLT BERANEK & NEWMAN INC

EX. 2

80'

WIRE FENCE                        ④

33rd STREET          34th STREET

170'

APPROXIMATE LINE FOR
APARTMENT
⑥

DELAWARE AUTO SALES

OFFICE

③

②

20'
①                                 ⑤  ├─12'

45'                                       48'

MARKET STREET

DELAWARE TOOL STEEL CORP

HAMMER        HEAT
SHOP          TREAT
              SHOP

Subsequent to 1953, defendant installed additional and somewhat noisier machinery and constructed a large doorway in the wall of the building fronting on Market Street. The door is approximately opposite position (1) on defendant's Exhibit 2, hereto attached. With the large door open, the noise from defendant's establishment increased to the point where plaintiffs complained, with the result that defendant's president, Levy, agreed to keep the door closed. The keeping open of several windows near the door in question still produces considerable noise when the operations of the defendant in the hammer shop are at their peak. Defendant refuses to keep the windows closed because it would cut off the circulation of air from its hammar shop and heat treat shop. See Exhibit 2 attached.

In 1960, plaintiff, Albert Kutner, advised defendant that plaintiffs planned the construction of an apartment building on their property and offered at his own expense to brick up the doorway and windows leading into the hammer shop and heat treating shop from which the noise emanated. Defendant refused.

Plaintiff's property has been approved by the Federal Housing Administration as a site for construction of 48 garden type apartments. Drawings prepared by a Wilmington architect indicate that the apartments will be located 110 ft. from the curb in front of the property or, including the width of both curbs and the width of Market Street, about 150 ft. from defendant's building.

Plaintiffs pray for a permanent injunction against the noise emanating from defendant's shop, and/or damages, based upon two grounds: (1) that the noise seriously interferes with the plaintiff, Albert Kutner's, conduct of his used-car business, (2) that the noise is so objectionable as to disturb seriously the anticipated operation by all the plaintiffs of the heretofore described apartment building.

Broadly speaking, the law applicable here is laid down by C.J.S. Vol. 66, Nuisances § 55c, at page 806:

"A factory or manufactory properly conducted is not necessarily a nuisance, and it is not classified as a nuisance per se; it becomes a nuisance only in relation to its surroundings. Since property used for factory or manufacturing purposes should not be so used as to injure another's property, a factory or manufactory may be a nuisance where it is so operated as injuriously to affect the neighbors or the public at large, even though it is located near a manufacturing district. Thus, a factory or manufactory may be so operated as to be a nuisance due to noise, vibration, or atmospheric pollution, especially where such annoyances occur at night. However, noises or smoke, resulting from the operation of a manufacturing plant, must be unreasonable and of such a character as to be of actual physical discomfort to persons of ordinary sensibilities."

Little time will be taken analyzing the law because, in my judgment, except at one location only, the noise in question is not so serious as clearly to represent "actual physical discomfort to persons of ordinary sensibilities." This is the portion of plaintiffs' lot directly opposite defendant's hammer and heat treat shop and extending back some distance into plaintiffs' property.[2] Were stores or dwellings existing, or to be erected, in that area, serious question would arise as to whether or not the noise would constitute an objectionable nuisance. However, this area is open and there are no present plans for building on it.

First, taking plaintiff, Albert Kutner's, used-car business, it is apparent from an examination of the area marked (1) on plaintiffs' Exhibit 2 that that particular section is used for the outdoor storage of used cars. Of course, it may

2. The general area from the curb on Market Street back to the numeral (1) on Exhibit 2.

be annoying to a customer standing directly opposite the hammer shop to attempt to discuss a deal with plaintiff's salesmen. But there is a sales office, a trailer ([3] on plaintiffs' Exhibit 2), set up for that purpose. Inside the trailer, business conversations can be carried on without any interference whatever with the windows and doors closed, for despite plaintiffs' evidence, the noise inside the trailer, as long as the trailer is closed, is not objectionable. In winter the doors and windows would naturally remain closed and in summer the trailer is cooled by an air conditioner necessitating keeping it closed.

I do not condone the noise in question. Someday it may have to be abated, but weighing the equities, bearing in mind that defendant's shop existed many years before plaintiffs came there, and that plaintiffs' business can be conducted in the trailer office without undue interference, I cannot find that a nuisance exists which seriously interferes with the conduct of the used—car business.

Turning to the contemplated apartment house, we have a different situation again. While a portion of the apartment would no doubt be opposite the hammer shop, the nearest wall of the apartment as now laid out would be about 150 ft. from the front wall of defendant's hammer shop. Standing at a position marked (6) on Exhibit 2, the peak noise is clearly noticeable but not comparable to position (1) along the curb of Market Street. I cannot say unequivocally that the noise will constitute a nuisance in the light of the following circumstances. (1) We do not know how the apartment will be constructed, (2) whether it will be air-conditioned, (3) and how loud the noise would sound with apartment windows closed. (4) Defendant does not operate the hammer shop or any other part of its business after 5:00 p. m. Moreover, and of great importance in my consideration of these facts, is the question whether the apartment will ever be built. It exists on paper only. If it is actually constructed and the noise is objectionable to the tenants, the whole matter can

again be reviewed on a new application for an injunction.

In arriving at these fact conclusions, I have found that the record, or tape, of the noise in question prepared by defendant's expert presents a true picture of the sounds emanating from defendant's shop as heard at the various locations numbered on Exhibit 2.

The plaintiffs having failed to meet their burden of demonstrating that they are entitled to relief, the injunction is denied. This opinion shall constitute findings of fact and conclusions of law.

Order upon notice.